## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MERCK & CO., INC.,** | |
| **Plaintiff,** | Civil Action No.: |
| | 2:16-cv-05459-WJM-MF |
| v. | |
| **UNITED STEEL WORKERS OF** | **OPINION** |
| **AMERICA, Local 4-575,** | |
| **Defendant.** | |

### WILLIAM J. MARTINI, U.S.D.J.:

Plaintiff Merck & Co., Inc. (the "Company" or "Plaintiff") brings this action against Defendant United Steelworkers of America, Local 4-575 (the "Union" or "Defendant") seeking to vacate an arbitration award sustaining a grievance brought by the Union under the parties' 2012 collective bargaining agreement (the "2012 CBA"). This matter comes before the Court on Plaintiff's motion for summary judgment seeking to vacate the arbitration award, ECF No. 44, and Defendant's own motion for summary judgment on its counterclaim seeking to enforce the arbitration award, ECF No. 45. For the reasons set forth below, the Plaintiff's motion for summary judgment is **GRANTED**, and Defendant's motion for summary judgment is **DENIED**.

I.      BACKGROUND

A. **Factual Background**

The material facts of this case are not in dispute. This action arises out of the amount of paid time provided to employees who receive or attend "anniversary lunches" offered by the Company to its employees, including Union members, upon reaching certain specified seniority milestones. Pursuant to the Company's "Service Awards Program Procedures," employees are entitled to an anniversary lunch upon reaching their 25th year of service, and again every five years after that. Service Awards Program Procedures, Decl. of Seth Spiegal, Esq., Ex. D, ECF No. 45-2. The Service Awards Program Procedures do not provide an amount of time for which the lunch recipient and their guests shall be paid in connection with the anniversary lunch. *Id.*

On December 1, 2013, an employee and Union member attended an anniversary lunch and received two (2) hours of paid time in connection therewith. Decl. of Jonathan Beck, Esq., Spiegal Decl., Ex. C, at ¶ 4. Shortly thereafter, on January 14, 2014, the Union

filed a grievance under the 2012 CBA contending that the employee was entitled to receive four (4) hours of paid time rather than two. *Id.*

### B. The 2012 CBA

At all relevant times, the Company and the Union were parties to the 2012 CBA, which was effective from May 1, 2012 through April 30, 2015. *See* 2012 CBA, Spiegal Decl., Ex. A. The 2012 CBA is comprised of two separate agreements: a "Master Agreement" and a "Local Supplemental Agreement." *Id.* The Local Supplemental Agreement contains a number of provisions governing the scope of the 2012 CBA and the procedures for resolving grievances as they relate to the Company's facility in Rahway, New Jersey. Specifically, Article XXI of the Local Supplemental Agreement titled "Effect of Other Agreements and Past Practices" provides, in relevant part:

1. Except for those side letters, written agreements, past practices, verbal agreements, and any other agreement which are set forth in the Side Letter/Other Agreements book, all prior written and verbal agreements, past practices, memoranda of understanding or other agreements shall have no force and effect. Those Agreements set out, or incorporated by reference, in the Side Letter/Other Agreements book shall expire at the same time as this Agreement.

2. The Company and the Union agree that no agreement is binding on the respective parties unless in writing and signed by the representative or representatives designated by that party as having signatory authority. Each Party will provide written notice of the individual(s) that have signatory authority at the time of signing this Agreement. Each Party agrees that it will provide written notice of the individual(s) having such signatory authority if there are any future changes.

CBA, Local Supplemental Agreement, Art. XXI. This section, commonly referred to as a "zipper clause" purports to extinguish contractual reliance on previous formal or informal agreements between the parties unless expressly incorporated into the Side Letters/Other Agreements book in a signed writing.

In addition to the zipper clause, the 2012 CBA provided that the resolution of disputes between the parties arising thereunder would be governed by a detailed grievance process, and that any disputes which could not be resolved through such grievance process could be submitted by either party for arbitration. CBA, Local Supplemental Agreement, Art. XIV(2)(A)(1). In setting forth the precise arbitration procedures to be followed, the CBA provides, in relevant part:

The arbitrator shall not be governed by legal rules of evidence but may receive any logical evidence which the arbitrator may deem to have probative value. The decision of the arbitrator shall be final and binding on the Company, the Union, and the employees, except that the arbitrator shall have

2

no power to add to, subtract from, or modify any of the terms of this Agreement or any agreements made supplementary hereto. The arbitrator shall be asked to render his decision within fifteen (15) days after the case is presented for arbitration.

CBA, Local Supplemental Agreement, Art. XIV(2)(C).

The 2012 CBA does not contain any references to the Company's Service Awards Program Procedures or anniversary lunches in general. Union Resp. to Merck Stmt. of Undisputed Facts, ¶¶ 3-4, ECF No. 46. Nor was there any signed written agreement between the parties in the Side Letter/Other Agreements book providing for four hours of paid time for anniversary lunches. *Id.* at ¶¶ 21-22.

### C. Procedural History

Pursuant to Article XIV of the Local Supplemental Agreement, the grievance was submitted to arbitration and a hearing was held on September 11, 2015 before Arbitrator John M. Skonier (the "Arbitrator"). Beck Decl., at ¶ 5. During the arbitration proceeding, the Company argued that the 2012 CBA was silent on the subject of anniversary lunches, that no written policy or agreement was in place providing for the length of paid time with respect to anniversary lunches, and that the 2012 CBA's zipper clause precluded the Union from relying on any alleged past practice with respect thereto to bind the Company. Union Resp. to Merck Stmt. of Undisputed Material Facts, ¶¶ 20, 24-26. The Union argued that because the Company had in fact continued the practice of providing four hours of paid time for anniversary lunches following the May 1, 2012 effective date of the 2012 CBA, the zipper clause was unenforceable with respect thereto., ¶¶ 19, 23.

On June 10, 2016, the Arbitrator issued his award sustaining the Union's grievance and finding that the Company violated the 2012 CBA by failing to provide employees with four hours of paid time off for attending an anniversary lunch. The Arbitrator made three key findings: (1) that prior to November 2013, "if an employee elected to have an anniversary luncheon, he or she would be given four hours of paid time"; (2) that the 2012 CBA did not reference anniversary lunches and that the Service Awards Program Procedures did not specify a length of time for such lunches; and (3) that the practice of offering four hours of paid time per anniversary lunch "continued well after Article 21 was inserted into the contract." Award, Spiegal Decl., Ex. E, at 10-11. Based on these findings, the Arbitrator concluded that the zipper clause therefore did not serve to automatically eliminate the practice of providing four hours of paid time for anniversary lunches and that a change in that practice required the consent of the Union. *Id.*

## II.   LEGAL STANDARD

### A. Motion for Summary Judgment

Federal Rule of Civil Procedure 56 provides for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the

3

outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party must support its position by citing to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[,] . . . admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court considers the record in the light most favorable to the non-moving party while drawing all reasonable inferences in that party's favor. *Bowers v. NCAA*, 475 F.3d 524, 535 (3d Cir. 2007). The standard for deciding whether to grant a summary judgment motion is the same even where, as here, the parties files cross-motions. *In re Cooper*, 542 F. Supp. 2d 382, 385-86 (D.N.J. 2008). In ruling on cross-motions for summary judgment, the Court must evaluate the competing motions independently under the applicable standard. *Boardwalk Regency Corp. v. Unite Here Local 54*, No. 08-0016 (JBS), 2009 WL 540675, at *4 (D.N.J. Mar. 3, 2009).

## B. Review of Arbitration Awards

The Court's review of an arbitration award is "quite narrow" and exceedingly deferential to the findings and conclusions of the arbitrator. *Akers Nat'l Roll Co v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 712 F.3d 155, 160 (3d Cir. 2013). Arbitration awards are "entitled to a strong presumption of correctness" and, in reviewing such awards, the Court is not free to correct even serious factual or legal errors made by an arbitrator. *Rite Aid of N.J., Inc. v. United Food & Com. Workers Union, Local 1360*, Civ. A. No. 11-00374 (RMB/JS), 2011 WL 5920939, at *3 (D.N.J. Nov. 28, 2011); *see also Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 240 (3d Cir. 2005). Rather, an arbitration award must be upheld so long as it "draws its essence from the collective bargaining agreement." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987). An award draws its essence from the collective bargaining agreement "if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention." *Ludwig Honold Mfg. Co v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969). In other words, "if an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Major League Baseball Players Ass'n v. Garvey*, 432 U.S. 504, 509 (2001) (per curiam).

Despite this deferential standard of review, however, the Court is not a mere rubberstamp of the arbitrator's decision. The Court may properly vacate an arbitration award "if it is entirely unsupported by the record or if it reflects a manifest disregard of the agreement." *Citgo Asphalt Ref. Co. v. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union Local No. 2-991*, 385 F.3d 809, 816 (3d Cir. 2004). "Further, an arbitrator must act within the scope of authority conferred [upon] him by the CBA." *Monongahela Valley Hosp. Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 946 F.3d 195, 199 (3d Cir. 2019). Put differently, an arbitrator is not free to disregard the plain language of a collective bargaining agreement and stray so far from the interpretation and application thereof so as to "effectively 'dispense [their] own

4

brand of industrial justice.'" *Garvey*, 532 U.S. at 509 (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960)).

## III.    DISCUSSION

The question at the heart of this dispute is simple: did the Arbitrator manifestly disregard the terms of the 2012 CBA in concluding that the Company was required to continue the practice of providing four hours of paid time off for anniversary lunches? The Company urges the Court to answer in the affirmative, arguing that because the CBA was silent on the subject of anniversary lunches and contained a zipper clause that unambiguously rendered all past practices and other agreements of "no force and effect," the Arbitrator improperly considered past practice and effectively added a new term to the CBA by imposing an unwritten condition on the Company beyond the scope of his authority. The Union disagrees and argues that the Arbitrator's determination that the zipper clause did not automatically eliminate the practice of offering four hours of paid time for anniversary lunches because that practice continued after the effective date of the 2012 CBA and did not directly contradict its terms was a rational interpretation thereof based on the evidence in the record which is entitled to substantial deference. For the reasons that follow, the Court concludes that this case presents one of the rare circumstances where it is clear that the Arbitrator exceeded the scope of his authority conferred upon him by the 2012 CBA and manifestly disregarded the terms thereof such that the Award must be vacated.

### A.    The Award Manifestly Disregards the Terms of the 2012 CBA

Despite the deference afforded to them, arbitrators "may not ignore the plain language of the contract." *Misco*, 484 U.S. at 38. Nor may an arbitrator look to extrinsic evidence to contradict the plain meaning of the contract or "to introduce ambiguity into an unambiguous CBA." *Bricklayers & Allied Craftworkers Local 5 of N.J. Pension & Annuity Funds v. Chanree Constr. Co.*, No. 12-3897 (FLW)(LHG), 2013 WL 6528776, at *3 (D.N.J. Dec. 12, 2013) (citing *Akers*, 712 F.3d at 161); *Boardwalk Regency*, 2009 WL 540675, at *7 ("[T]he Arbitrator could not rely upon extrinsic evidence to reach an interpretation of the CBA that conflicts with the express provisions of the Agreements." (quotations omitted)). Thus, absent "either contractual language on which to hang the label of ambiguous or some yawning void . . . that cries out for an implied term," *Akers*, 712 F.3d at 161-62 (quoting *U.A.W. Local 1697 v. Skinner Engine Co.*, 188 F.3d 130, 146 (3d Cir. 1999)), an arbitrator must enforce the agreement as written.

Here, the Arbitrator's conclusion that the zipper clause did not automatically eliminate the practice of providing four hours of paid time for anniversary lunches because that practice continued beyond the effective date of the 2012 CBA and was not otherwise in direct conflict with other provisions of the 2012 CBA ignores the unambiguous plain meaning of the zipper clause. Article XXI(1) of the Local Supplemental Agreement is clear: all past practices and other agreements in existence on the effective date of the 2012 CBA were of "no force and effect" *unless* explicitly set forth in the Side Letter/Other Agreements book. CBA, Local Supplemental Agreement, Art. XXI. In other words, the

5

zipper clause clearly and unambiguously (1) disclaimed any reliance on past practices or extracontractual agreements; *and* (2) established a mechanism by which the parties could continue to bind themselves to certain practices and agreements not covered by the 2012 CBA itself. To that end, the Arbitrator acknowledged, and the parties do not dispute, that the 2012 CBA neither references the Service Awards Program Procedures providing for anniversary lunches nor contains any provision with respect to either anniversary lunches or the appropriate amount of paid time provided therefor. Award, Spiegal Decl., Ex. E, at 10. The Arbitrator further acknowledged, and again the parties do not dispute, that there is no agreement or practice with respect to either anniversary lunches or the appropriate amount of paid time in connection therewith in the Side Letter/Other Agreements book. *Id.* at 11. The Arbitrator was not free to ignore the plain language of the 2012 CBA in finding, despite the clear terms of the zipper clause, that the Company was nonetheless bound to continue the practice of offering four hours of paid time off for anniversary lunches.

In this respect, it does not matter whether the practice of offering four hours of paid time for anniversary lunches in fact continued after the effective date of the 2012 CBA. Although such evidence could in certain circumstances be used to find a "binding past practice" that would in effect create an additional implied term of the contract, it cannot do so where the express terms of the contract itself either contradict such an implied term or clearly and unambiguously foreclose that result. *Boardwalk Regency*, 2009 WL 540675, at *7. Indeed, the Arbitrator appeared to recognize this principle in stating that the zipper clause only "eliminates automatically" those practices which conflict with the contract's terms. *See* Award, Spiegal Decl., Ex. E, at 10. The Arbitrator's focus, however, was on the wrong object: although nothing in the 2012 CBA conflicted with the practice of providing four hours of paid time (because it was silent on the topic), it was not silent on either the method for binding the parties to agreements and practices not provided for therein or the limitations on the Arbitrator's authority for imposing such terms. Put differently, though the Arbitrator may have been correct in noting that certain practices between parties to a CBA are not necessarily "matters for agreement" that belong in the CBA itself, he incorrectly ignored the zipper clause's creation of the Side Letters/Other Agreements book for precisely that purpose. Because both the 2012 CBA and the Side Letter/Other Agreements book were silent on the subject, even though the Company may have continued to provide four hours of paid time until November 2013, it was not *bound* to do so. *See, e.g., Armstrong Cnty. Memorial Hosp. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 419 F. App'x 217 (3d Cir. 2011) (vacating arbitration award where arbitrator found that hospital was bound to honor past practice of permitting smoking at designated locations despite clear CBA provision stating that management rights to make reasonable policies and procedures were not limited by prior or existing practices); *Boardwalk Regency*, 2009 WL 540675, at *6-7; *Dematic Corp. v. Int'l Union, United Auto., Aerospace, & Agr. Implement workers of Am. (UAW)*, 635 F. Sup. 2d 662, 674-75 (W.D. Mich. 2009) (vacating arbitration award finding that company

was bound by past practice of paying benefits more than three months following layoffs despite provision in CBA expressly limiting such payments to three months).[1]

Similarly, the 2012 CBA's silence on the topic of anniversary lunches is not a "yawning void" in the contract crying out for an implied term. The Third Circuit has repeatedly cautioned that "[e]xtrinsic evidence should not be used to add terms to a contract that is plausibly complete without them." *U.A.W. Local No. 1697 v. Skinner Engine Co.*, 188 F.3d 130, 146 (3d Cir. 1999) (quoting *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 608 (7th Cir. 1993) (en banc); *Cup v. Ampco Pittsburgh Corp.*, 903 F.3d 58, 64 (3d Cir. 2018). To that end, silence, standing alone, is not a justification for the imposition of an additional term into the contract. *See Bricklayers*, 2013 WL 6528776, at *4. This is not a case in which the CBA sets up a procedure, policy, or mechanism, but remains silent on the details necessary to give effect thereto. *See, e.g., Indep. Lab. Emps. Union, Inc. v. ExxonMobil Research & Eng'g Co.*, No. 3:18-cv-10835-BRM-DEA, 2019 WL 3416897, at *12-13 (D.N.J. July 29, 2019) (confirming arbitration award holding that company could not exercise right in CBA to use independent contractors to permanently replace union employees where CBA was silent as to the permissible duration and purpose of using independent contractors and also required union to be exclusive representative of certain classifications of employees); *Indep. Lab. Emps. Union, Inc. v. ExxonMobil Research & Eng'g Co.*, No. 17-cv-11858 (PGS), 2018 WL 1003272, at *5-6 (D.N.J. Feb. 20, 2018) (upholding arbitration award where arbitrator concluded, based on consistent past practice, that parties to CBA understood United Way Day Off as among unidentified "approved absence[s] with pay by the Company" for purposes of calculating time worked under the CBA). Rather, the 2012 CBA is completely silent on the subject of anniversary lunches and there is simply no reason to believe that this silence renders the 2012 CBA incomplete or ambiguous in some way. To the contrary, the zipper clause anticipates this very issue by extinguishing any binding effect of all practices and agreements that are not specifically

---

[1] For this reason, the Union's reliance on *Akers* for the proposition that a past practice may "in effect supersede[] a management rights and zipper clause" in a CBA is unpersuasive. Union Mot. at 11. First, in *Akers*, the Third Circuit specifically noted the arbitrator's conclusion that the zipper clause at issue in that case, which only required that agreements had to be in writing and signed by the parties, "d[id] not acknowledge that the written contract constitute[d] the parties' entire agreement, [was] not explicit with regard to a waiver of the right to bargain about other conditions, nor [was] it a specific affirmation that management rights are not limited by prior practices." *Akers*, 712 F.3d at 164. That stands in stark contrast to the zipper clause at issue here, which expressly disclaims future reliance on any past practices or other agreements not set forth in writing in the Side Letters/Other Agreements book. Second, the Third Circuit had determined that the arbitrator reasonably found the substantive management rights clause at issue in that case, which gave management the exclusive right to manage the company's business and "direct the working forces," including the right to hire, suspend, discharge, transfer, or relieve employees from duty, to be ambiguous because it did not specifically mention an exclusive right to schedule employees for work. *Id.* at 161-63. Here, the Court has already concluded that the zipper clause is unambiguous.

recorded in the Side Letters/Other Agreements book. In other words, the express terms of the zipper clause, "far from opening a 'yawning void' in the contract" leaves the question of whether unwritten past practices or other agreements remained binding on the parties "well settled." *Bricklayers*, 2013 WL 6528776, at \*4.[2]

The Arbitrator's conclusion that the continuation of the practice of providing four hours of paid time off for anniversary lunches was an exception to, or otherwise outside the scope of, the zipper clause was not based on a rational interpretation of the 2012 CBA. By ignoring the clear language of the zipper clause, the Arbitrator improperly sought to "derive 'not the meaning of the writing, but an intention wholly unexpressed in the writing'" that "in effect erase[d], rather than interpret[ed]" this provision of the 2012 CBA. *Boardwalk Regency*, 2009 WL 540675, at \*7 (quoting *Am. Cyanamid Co. v. Fermenta Animal Health Co.*, 54 F.3d 177, 181 (3d Cir. 1995)). In so doing, the Arbitrator disregarded the plain language of the 2012 CBA and the Award must therefore be vacated.

## B. The Arbitrator Exceeded the Scope of His Authority

Even assuming that the Arbitrator's decision did not ignore the plain meaning of the zipper clause, it is clear that his decision exceeded the scope of his authority. An arbitrator derives their authority from the terms of the CBA itself. *Monongahela Valley Hosp.*, 946 F.3d at 200. Here, Article XIV(2)(C) makes clear that the Arbitrator has "no power to add to, subtract from, or modify any of the terms of [the 2012 CBA]." CBA, Local Supplemental Agreement, Art. XIV(2)(C). The Arbitrator's decision, however, violates this provision of the 2012 CBA and exceeds his authority in two respects.

First, by finding that a past or current practice of providing four hours of paid time for anniversary lunches was binding on the Company, the Arbitrator impermissibly erased the terms of the zipper clause from the contract that rendered all unwritten past practices and other agreements not set forth in the Side Letters/Other Agreements book "of no force and effect." Alternatively, the Arbitrator's decision could be seen as an impermissible modification of the terms of the zipper clause by imposing an additional exception to its

---

[2] Neither can the continuation of the practice of providing four hours of paid time for anniversary lunches demonstrate a "relaxation of the literal language" of the 2012 CBA. *Akers*, 712 F.3d at 163 & n.1. The relevant language in the 2012 CBA is the zipper clause itself, which does not concern anniversary lunches or any specific right or program of the parties. The Arbitrator made no findings, and the record is devoid of any evidence suggesting, that the parties have ever demonstrated a willingness to relax the literal terms of the zipper clause. There is no evidence that the parties understood or intended the zipper clause to allow certain unwritten practices to continue to bind them in the absence of documentation in the Side Letters/Other Agreements book. In other words, there is no indication that the parties have demonstrated a willingness to be bound by anything other than the literal language of the zipper clause that all past practices and other agreements are of no force and effect unless specifically recorded in the Side Letters/Other Agreements book.

general disclaimer of any binding effect of past practices or other agreements. As constructed, the zipper clause provides that all past practices, understandings, or other agreements shall be of no force and effect, except for those documented in the Side Letters/Other Agreements book. CBA, Local Supplemental Agreement, Art. XXI. However, the Arbitrator's decision effectively adds a condition to the zipper clause whereby it leaves all past practices, understandings, or other agreements of no force and effect except for those documented in the Side Letters/Other Agreements book, *or those to which the parties may voluntarily continue to adhere and which do not otherwise conflict with the specific terms of the 2012 CBA.* Award at 10-11. By effectively inserting this additional condition into the zipper clause, the Arbitrator exceeded his authority by impermissibly modifying the terms of the 2012 CBA. *See Monongahela Valley Hosp.*, 946 F.3d at 200 (finding arbitrator's decision imposing "operating need" restriction on hospital's exclusive right to schedule vacations under CBA exceeded scope of authority); *Armstrong Cnty. Memorial Hosp.*, 419 F. App'x at 221-22 (vacating arbitration award where arbitrator's decision that policy providing for designated smoking locations was a "protected working condition" that bound hospital despite that term not appearing in the CBA and clear CBA provision stating that management rights to make reasonable policies and procedures were not limited by prior or existing practices "effectively rewrote the parties' agreement").

Second, the Arbitrator's decision in effect fashions an entirely new substantive right into the 2012 CBA out of whole cloth. Where the 2012 CBA is completely silent on the subject of anniversary lunches, the Arbitrator's decision would effectively add to the 2012 CBA's terms by elevating that practice to a mandatory subject of collective bargaining. Because the 2012 CBA was itself complete and unambiguous without any discussion of anniversary lunches, the Arbitrator's decision to include the practice within the purview of the 2012 CBA impermissibly added to the 2012 CBA's terms. *See Bricklayers*, 2013 WL 6528776, at *4.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is **GRANTED** and Defendant's motion is **DENIED**. An appropriate order follows.


_____
WILLIAM J. MARTINI, U.S.D.J.


Date: March 25, 2021

9